UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>DANIEL BEAR RUNNER RED FEATHER,<br><br>　　　　　Defendant. | CR. 18-50138-JLV<br><br><br>ORDER |

## INTRODUCTION

Defendant Daniel Bear Runner Red Feather, appearing *pro se*, filed a motion for compassionate release. (Docket 67). Pursuant to the May 1, 2020, Standing Order 20-06, the Federal Public Defender for the Districts of South Dakota and North Dakota ("FPD") and the United States Attorney for the District of South Dakota filed records, submissions and briefing on Mr. Red Feather's motion. (Dockets 69, 71, 75, 77-79). For the reasons stated below, defendant's motion is denied.

## STANDING ORDER 20-06

Standing Order 20-06,[1] captioned "Establishing a Procedure for Compassionate Release Motions Under the First Step Act," put in place "a

---

[1] See https://www.sdd.uscourts.gov/so2006 ("SO 20-06"). SO 20-06 was amended on October 21, 2020, after this case was ripe for resolution. See https://www.sdd.uscourts.gov/socraa. The amendments have no impact on the court's analysis of this case.

procedure for submission and consideration of compassionate release motions under the First Step Act, 18 U.S.C. § 3582(d)(l)(A), in the wake of the spread of the COVID-19 virus into the federal prison system." (SO 20-06 at p. 1). Under the order, the FPD is automatically "appointed to represent all defendants in criminal cases: (a) who previously were determined to be entitled to appointment of counsel or who are now indigent; and (b) who may be eligible to seek compassionate release under the First Step Act." Id. ¶ 1. The initial step for the FPD is to

> communicate a recommendation to inmates interested in compassionate release that they immediately submit requests for compassionate release to the warden of the facility in which they are detained, if they have not done so already. These communications will include the recommendation that the prisoner describe their proposed release plan.

Id. ¶ 2.

By the standing order, "within two business days of filing all motions for compassionate release[,]" the FPD and the United States Attorney for the District of South Dakota are "to place [the defendant] into one of four categories[.]" Id. ¶ 4. Those categories are:

    a.    High Priority Cases where there exists some combination of: (i) medical issues that correspond to the categories outlined in the commentary to U.S.S.G. § l.B.1.13; (ii) recognized COVID-19 risk factors in the inmate's medical history; and/or (iii) imprisonment in a federal facility known to have a serious COVID-19 outbreak in its population. . . .

    b.    Intermediate Priority Cases where identified medical issues and/or COVID-19 risk factors and/or institutional concerns are less extreme than High Priority Cases.

  c. Low Priority Cases where there are no identifiable medical issues or COVID-19 risk factors.

  d. Unknown Risk Cases where there is a lack of sufficient information to categorize the request for compassionate release.

Id.  The FPD and U.S. Attorney are to "immediately report the categorization . . . to the Clerk of Court and the Probation Office."  Id.  The standing order contains provisions for sharing of critical information among the FPD, the U.S. Attorney, the Probation Office and the court.  Id. ¶ 5.  The priority of briefing is set according to the different categories of assignment of a defendant.  Id. ¶¶ 6-8.

## MR. RED FEATHER'S CLASSIFICATION

On August 21, 2020, the FPD and the U.S. Attorney filed a notice designating Mr. Red Feather as an Intermediate Priority case.  (Docket 68).

## FACTUAL BACKGROUND

On June 6, 2019, Mr. Red Feather was sentenced to a term of imprisonment of 36 months for conspiracy to commit robbery in violation of 18 U.S.C. §§ 371, 2111 and 1153.  (Dockets 62 & 63).  Based upon a presentence investigation report ("PSR") ordered by the court, Mr. Red Feather's advisory guideline range was 51 to 60 months with a criminal history category IV.  (Dockets 63-1 at p. 1 & 58 ¶ 66).

Mr. Red Feather is currently an inmate at Federal Correctional Institution Victorville Medium I, a medium security facility in Victorville, California. (Docket 67 at p. 1); Fed. Bureau Prisons, https://www.bop.gov/

locations/institutions/vim/ (last checked Feb. 16, 2021).   The current total inmate population at FCI Victorville Medium I is 1073 persons.  Id.   As of February 16, 2021, there are five active COVID-19 cases among inmates, 12 among staff, one inmate death as a result of COVID-19 and 482 inmates and 50 staff had recovered.   https://www.bop/gov/coronavirus/ (last checked Feb. 16, 2021).

Mr. Red Feather has a scheduled release date of May 10, 2021.   (Docket 69 at p. 134); see also https://www.bop.gov/inmateloc/.   Mr. Red Feather has served nearly his entire sentence.   Though his projected home detention eligibility date was January 22, 2021, Mr. Red Feather is not eligible for home detention under his current status in the BOP.   (Docket 69 at pp. 138, 141).   Mr. Red Feather is 31 years old.   Id. at p. 133.

## MR. RED FEATHER'S MOTION

Mr. Red Feather's *pro se* motion seeks compassionate release on the basis of extraordinary and compelling reasons in light of his health conditions during the COVID-19 pandemic, coupled with his very near release date and his ineligibility for home detention.   (Docket 67 at pp. 1-2).   Mr. Red Feather's medical records confirm the following medical conditions:

- Obesity.   (Docket 69 at p. 52);
- Major depressive disorder.   Id.;
- Vision problems.   Id.;
- Headache.   Id.;

4

- Coronavirus COVID-19 test negative. Id.

While incarcerated his weight ranged from a low of 184 pounds on July 31, 2019, to a high of 208 pounds first recorded on June 12, 2020. Id. at pp. 9, 12, 35, 83. His height has been variously measured at 67.5 inches and 69 inches. Id. at pp. 9, 34, 45, 83. Based on his current weight of 208 pounds and a height of 67.5 inches, Mr. Red Feather has a body mass index ("BMI") of 32.1, which qualifies him as obese.[2] See id. at p. 52. Mr. Red Feather takes trazodone for depression and acetaminophen for headaches. Id. at p. 85.

In a supplement to the *pro se* motion, defense counsel argues that Mr. Red Feather's "obesity places him at a high risk of developing serious complications if he contracts COVID-19," though counsel concedes that at his young age obesity is the only risk factor for Mr. Red Feather. (Docket 75 at pp. 7, 9). Counsel further argues incarceration at Victorville Medium I FCI substantially enhances Mr. Red Feather's chances of contracting COVID-19 because of the infection rates at the facility,[3] and "[t]he high rate of infectivity in his prison facility, combined with his inability to socially distance

---

[2] If Mr. Red Feather's BMI is calculated at a height of 69 inches and 208 pounds, his BMI is 30.7, only slightly above the obesity range starting at a BMI of 30.0 and above. See Ctrs. Disease Control & Prevention, Adult BMI Calculator, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last checked Jan. 26, 2021).

[3] Defense counsel reports that as of August 31, 2020, there were 146 active cases among inmates and 324 total inmates with positive tests at Victorville Medium I FCI. Id. at p. 9. According to counsel this represents a 14 percent infection rate at that time and an overall infection rate of 32 percent at the facility.

and his known risk factor, constitute an extraordinary and compelling reason" for release. Id. at p. 9. Next, reminding the court of the substantial downward variance in his sentence, counsel suggests those same factors also support Mr. Red Feather's release under the § 3553(a) factors. Id. at p. 12. Finally, counsel asserts that because the BOP will not release Mr. Red Feather to home confinement for the last six months of his sentence, as is customary,[4] the court could rectify this unfairness by granting him compassionate release. Id.

Mr. Red Feather represents that if released from custody, he will stay at the home of his aunt, Veatrice Weasel Bear, in Pine Ridge, South Dakota. Id. at p. 13. He further asserts he will be subject to "very pro-social influences in his life" by being near his aunt and brother Julian Bear Runner. Id.

## UNITED STATES' OPPOSITION

The government opposes Mr. Red Feather's motion for compassionate release. (Docket 77). The government asserts "[t]he existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not by itself . . . provide a basis for a sentence reduction." Id. at p. 7. The government acknowledges a defendant who has a medical condition that puts him at risk for COVID-19 may warrant release and admits obesity is

---

[4]Mr. Red Feather has an outstanding eight-day sentence to serve for a state offense in Nebraska. Id. at p. 12. Because of this, BOP will not release him early to home confinement or a halfway house. Id.; see also Docket 69 at pp. 138-42.

6

one of those conditions.  Id. at pp. 6, 8.  In fact, the Department of Justice issued guidance that "during the current COVID-19 pandemic, an inmate who presents with obesity, as confirmed by medical records, and who is not expected to recover from that condition, presents an extraordinary and compelling reason allowing compassionate release under the statute and guideline policy statement."  Id. at p. 8.  Some courts, as noted by the government, have disagreed with this concession.  Id. at p. 9 (citing United States v. Walking Eagle, 5:08-CR-50100-01; United States v. McAbee, 4:14-CR-40027, 2020 WL 5231439, at *3 (D.S.D. Sept. 2, 2020); United States v. Saenz, 3:10-CR030027, 2020 WL 4347273, at *5 (D.S.D. July 29, 2020)).

Next, the government argues the § 3553(a) factors weigh against Mr. Red Feather's release.  Id.  The government submits Mr. Red Feather would pose a danger to public safety if released based on his "lengthy history of drug use and violence, as well as other crimes."  Id. at p. 10.  Reciting his criminal history, the government notes Mr. Red Feather was convicted of ingestion of a non-alcohol intoxicant at age 18; simple assault at age 21; felony failure to appear/report felony at 21; domestic abuse/false imprisonment at age 26, which involved a girlfriend whom he punched, threatened to kill and choked until she was nearly unconscious; and a controlled substance charge at age 27 involving "a high-speed chase starting on Pine Ridge Reservation and ending in Hermosa, South Dakota."  Id. (see also Docket 58 ¶¶ 23-29).  Furthermore,

7

the government notes the present offense involved violence and intoxication. (Docket 77 at p. 11).

In addition to his dangerousness to the public, the government argues other § 3553(a) factors also weigh against early release. Id. Focusing on the downward variance of 15 months in Mr. Red Feather's sentence, the government argues that requiring him to serve his full imposed sentence reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense. Id. at p. 12. According to the government, "[Mr.] Red Feather's crime and his history does not warrant an additional reduction." Id.

In reply, defense counsel argues Mr. Red Feather is "aging out of his previous criminality, he has no allegations of violence in BOP custody, he's served the vast majority of his sentence, and his release date is near." (Docket 78 at p. 1). Noting Mr. Red Feather is in his early thirties, counsel suggests this is the age men start to "age out" of criminality. Id. at p. 6. As to seriousness of the underlying robbery conviction, defense counsel describes the offense as "an aborted attempt cooked up by two intoxicated young men . . . ." Id. at p. 7. In sum, defense counsel argues, "[i]n light of the changed circumstances posed by the pandemic and [Mr. Red Feather's] unique susceptibility to the virus, the amount of time he's served is more than adequate to satisfy § 3553(a)." Id. at p. 9.

**ANALYSIS**

**<u>Administrative Exhaustion</u>**

Section 3582(c) permits the district court to consider a prisoner's request for compassionate release after he exhausts the administrative remedies mandated by the statute.

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

There is no disagreement Mr. Red Feather exhausted his administrative remedies. The court will therefore address the merits of the motion.

**<u>Extraordinary and Compelling Reasons</u>**

"Section 3582(c)(1)(A)(i) does not attempt to define the 'extraordinary and compelling reasons' that might merit compassionate release." United States v. McCoy, 981 F.3d 271, 276 (4th Cir. 2020). That task was left to the United States Sentencing Commission. "[I]n promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) . . . [the Sentencing Commission] shall describe what should be considered

9

extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).

Prior to the First Step Act, the Sentencing Commission established four categories for "extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Those categories generally focus on the defendant's age, medical condition, family situation and any other reasons the BOP deems extraordinary and compelling. U.S.S.G. § 1B1.13 comment. n.1. The four categories have not been updated since December 2018 when the First Step Act became law.[5]

The United States Courts of Appeals for the Second, Fourth, Sixth and Seventh Circuits have addressed the court's authority under the First Step Act.[6] See United States v. Brooker, 976 F.3d 228 (2d. Cir. 2020); United States v. McCoy, 981 F.3d 271 (4th Cir. 2020); United States v. Jones, 980 F.3d 1098 (6th Cir. 2020); and United States v. Gunn, 980 F.3d 1178 (7th Cir. 2020).

The Second Circuit identified the question at the heart of these cases, which is "whether the First Step Act allows courts independently to determine

---

[5]The United States Sentencing Commission lacks a quorum and "currently has only two voting members, two shy of the four it needs to amend the [U.S.S.G.]." United States v. Marks, 455 F. Supp. 3d 17, 24 (W.D.N.Y. 2020) (references omitted).

[6]The United States Court of Appeals for the Eighth Circuit had two clear opportunities to address this issue but declined to do so. United States v. Rodd, 966 F.3d 740 (8th Cir. July 16, 2020) and United States v. Loggins, Jr., 966 F.3d 891 (8th Cir. July 31, 2020).

10

what reasons, for purposes of compassionate release, are 'extraordinary and compelling,' or whether that power remains exclusively with the BOP Director as stated in Application Note 1(D)." Brooker, 976 F.3d at 234. The Second Circuit concluded "that, despite Application Note 1(D), the First Step Act freed district courts to exercise their discretion in determining what are extraordinary circumstances." Id. The court held the language of U.S.S.G. § 1B1.13 "is clearly outdated and cannot be fully applicable." Id. at 235. "[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion." Id. at 237; see also Gunn, 980 F.3d at 1180 (agreeing with the Second Circuit that the Guidelines Manual "does not curtail a district judge's discretion"); Jones, 980 F.3d at 1111 ("In cases where incarcerated persons file motions for compassionate release, federal judges . . . have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13."); McCoy, 981 F.3d at 283 ("As of now, there is no Sentencing Commission policy statement 'applicable' to the defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction.").

The court retains its independent authority "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [the court] in motions for compassionate release." Brooker, 976 F.3d at 237. See also McCoy, 981 F.3d at 284 (same); Jones, 980 F.3d at 1111 (same); Gunn, 980 F.3d at 1180 (same).   The purpose of the First Step Act was to expand the availability of compassionate release based on judicial findings of extraordinary and compelling reasons without being restricted to those categories identified by the Sentencing Commission or the rationale used by the BOP before the passage of the First Step Act.

Mr. Red Feather argues his obesity combined with the COVID-19 pandemic and the infectivity rates at Victorville Medium I FCI are extraordinary and compelling reasons warranting compassionate release. Despite the expanded authority under the First Step Act, the court finds Mr. Red Feather has not met his burden of proof by presenting "extraordinary and compelling reasons" warranting a sentence reduction under § 3582(c)(1)(A)(i). Mr. Red Feather is 31 years old. The Centers for Disease Control and Prevention ("CDC") recognizes older adults are at greater risk of requiring hospitalization or dying as a result of COVID-19. See Older Adults and COVID-19, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/ coronavirus/2019-ncov/need-extra-precautions/older-adult.html (last checked Jan. 26, 2021). Mr. Red Feather is only slightly older than the comparison

group comprising ages 18 to 29 years.  Id.  Mr. Red Feather's young age is a factor that weighs against release in the court's analysis.

The CDC indicates adults of any age have an increased risk of severe illness from COVID-19 if they have certain conditions, including cancer, chronic kidney disease, COPD, Down's syndrome, heart conditions, obesity, smoking, type 2 diabetes and several others.  People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Dec. 29, 2020). Mr. Red Feather has been diagnosed as obese but has none of the other identified conditions.  Neither does Mr. Red Feather have any of the conditions the CDC identified as potentially increasing the risk from COVID-19.  See id. (identifying moderate to severe asthma, cystic fibrosis, hypertension, neurologic conditions, liver disease, type 1 diabetes and several others).

Mr. Red Feather's obesity is a relatively recent condition.  As set out above, Mr. Red Feather's weight has fluctuated while he has been incarcerated. He was 184 pounds near the beginning of his incarceration on July 31, 2019. (Docket 69 at p. 35).  A few months later, on October 31, 2019, he weighed 187 pounds.  Id. at 9.  Neither of these placed him in the obese category.  See Adult BMI Calculator, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last checked Jan. 26, 2021).  As of June 12, 2020, Mr. Red Feather had gained approximately 20 pounds, which put him in the obese category.  (Docket 69 at

pp. 52, 83). But his correct BMI is questionable because his height measurements have varied by 1½ inches, either 67.5 or 69 inches. Id. at pp. 9, 34, 45, 83. The court concludes whether his BMI is 32.1 or 30.7 makes little difference. Either way, Mr. Red Feather's obesity alone is not sufficient to establish "extraordinary and compelling reasons" for release even in the face of the COVID-19 pandemic. This is particularly so when his medical records reveal he is generally healthy. See generally Docket 69 at pp. 1-129.

The court finds Mr. Red Feather has not met his burden of proof and presented "extraordinary and compelling reasons" warranting a sentence reduction under § 3582(c)(1)(A)(i).

### **3553(a) Factors**

Additionally, the court concludes the § 3553(a) factors do not support relief. A detailed analysis of these factors is unnecessary since Mr. Red Feather has not demonstrated "extraordinary and compelling reasons" for release. Suffice it to say, the court granted a significant downward variance to Mr. Red Feather at sentencing. The low end of his guideline range was 51 months, and the court sentenced him to 36 months. (Docket 63-1 at p. 4). That sentence was chosen with care to reflect his age, childhood trauma and ongoing addiction issues. Id. The court found the advisory guideline range too severe. Id. But the court concluded a sentence of 36 months in custody was "sufficient but not greater than necessary to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a)." Id. Mr. Red Feather is nearing the end of

14

that term and is eligible for release on May 10, 2021.   While it is unfortunate Mr. Red Feather does not qualify for BOP's step-down release to home confinement or halfway-house placement, consideration of this issue is not appropriate in the context of his motion for compassionate release.

## ORDER

No good cause having been proven, it is

ORDERED that defendant's motion for compassionate release (Docket 67) is denied.

Dated February 17, 2021.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE

15